IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BAY STATE PRECAST, INC. | : |  |
|  | : |  |
| v. | : | Civil Action No. DKC 13-3371 |
|  | : |  |
| ROYAL TRACTOR COMPANY, INC. | : |  |
|  | : |  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is the motion for default judgment filed by Plaintiff Bay State Precast, Inc. ("Bay State" or "Plaintiff"). (ECF No. 7). The court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for default judgment will be granted.

## I.   Background

The following allegations are contained in Plaintiff's complaint. (*See* ECF No. 1). Bay State is a manufacturer of precast concrete tunnel liner segments, operating out of Brandywine, Maryland. (*Id.* ¶ 1). Defendant Royal Tractor Company, Inc. ("Royal Tractor" or "Defendant") markets itself on its website as a "manufacturer of mobile equipment for industrial material handling." (*Id.* ¶ 2). In order to complete work on an ongoing project, Bay State decided to purchase a forklift from Defendant. (*Id.* ¶ 5). Plaintiff and Defendant

entered into a Purchase Order agreement dated September 5, 2012, pursuant to which Defendant promised to deliver a Royal Rig-N-Lift Model 40/60B forklift. (ECF No. 1-1, at 1).[1] The Purchase Order stated: "[e]stimated delivery is 240 days. In the event an order scheduled for delivery before this one is cancelled Royal agrees to move up the delivery date." (*Id.*). Thus, the forklift's estimated delivery date under the Purchase Order was May 3, 2013. (*Id.* at 6). The Contract Terms and Conditions state that "[d]eliveries shall be made at the time and in the manner specified. Time is of the essence." (*Id.* at 2).

Plaintiff agreed to pay $241,632 for the forklift. In connection with the contract, Bay State paid to Defendant a deposit in the amount of $72,488 before delivery. (ECF No. 1 ¶ 7; ECF No. 8-2). In order to perform work on the project before the anticipated May 3, 2013 estimated delivery, however, Bay State rented a comparable forklift at the rate of $6,500 per month. (ECF No. 1 ¶ 10). Bay State indicates that it intended to return the rental equipment once the purchased forklift was delivered on May 3, 2013. (*Id.*).

Plaintiff asserts that it made multiple inquiries as to the estimated delivery date of the forklift - both before and after May 3, 2013 - and each of these inquiries were met with

---

[1] As an exhibit to the complaint, Plaintiff attached an unsigned Purchase Order and accompanying exhibits thereto. (ECF No. 1-1).

Defendant's assurances that the forklift would be delivered. (*Id.* ¶¶ 11-15).  The forklift was not delivered by May 3, 2013, however.  Bay State contends that after the May 3, 2013 estimated delivery date, Defendant represented that it would deliver the forklift on June 10, 2013, which also did not happen.  (Id. ¶ 13).  The complaint asserts that "[m]ost recently, Royal represented to Bay State Precast that the probable delivery date of the Equipment would be November 22, 2013."  (*Id.* ¶ 15).

On August 29, 2013, Plaintiff contacted Defendant in order to terminate the Purchase Order.  (*Id.* ¶ 17).  Plaintiff also demanded a return of the $72,488 deposit, which Defendant has refused to return.  (*Id.* ¶¶ 17-19).  According to Bay State, it "reiterated its termination of the Contract and demand for return of the [d]eposit on multiple occasions, including but not limited to emails to Royal dated September 6, September 10, September 12, September 27, October 1, and October 7, 2013." (*Id.* ¶ 18).  Bay State returned the rental forklift which it rented for $6,500 per month at the end of October 2013.  (*Id.* ¶ 24).  Plaintiff asserts that it would not have had to use a rental forklift from May 2013 until October 2013 had Defendant delivered the forklift by May 3, 2013.

The complaint also asserts that as a result of the continual delays in the delivery of the forklift, "and because

no other comparable equipment was available for purchase from Royal or any other equipment manufacturer or equipment supplier, Bay State Precast decided to purchase a full size tractor from a different manufacturer." (*Id.* ¶ 20). This "replacement equipment" cost approximately $237,000. (*Id.* ¶ 21). According to the complaint, Plaintiff further had to expend approximately $21,000 to make necessary modifications to its plant systems, modifications which it contends "would not have been necessary with the purchase of the [forklift from Defendant]." (*Id.* ¶ 22). Thus, the replacement equipment cost Plaintiff an approximate total of $258,000, which is about $16,368 more than the $241,362 purchase price of the forklift. (*Id.* ¶ 23).

## II.  Procedural History

On November 12, 2013, Plaintiff filed a complaint against Defendant asserting breach of contract and an alternative claim for unjust enrichment. (ECF No. 1). Defendant was served with a summons and a copy of the complaint on November 13, 2013, and Plaintiff filed proof of service on December 5, 2013. (ECF Nos. 3 & 4). When Defendant failed to respond within the requisite time period, Plaintiff moved for clerk's entry of default. (ECF No. 6). Default was entered by the clerk on March 26, 2014. (ECF No. 10). On March 6, 2014, Plaintiff filed the pending motion for default judgment. (ECF No. 7).

**III. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Where a default has been previously entered by the clerk, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2).  A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.  *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (*citing United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (*citing Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not."  *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A

default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (*citing S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). The court may hold a hearing to consider evidence as to damages, but it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (*citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

## IV. Analysis

Assuming the truth of the well-pleaded allegations contained in the complaint, as the court must upon the entry of default, Plaintiff has established Defendant's liability for

breach of contract.[2]   Paragraph 4 of the Terms & Conditions in the Purchase Order states:

> Vendor shall protect, defend, save harmless and indemnify Contractor for all loss, cost, delay, liability, damage, liquidated or otherwise, and *expense which Contractor may sustain, have assessed or incur in consequence of anything done or omitted*, or claimed to have been done or omitted herein by Vendor or anyone acting for Vendor, including but not limited to any claim of . . . (c) damage by reason of the failure of Vendor to *perform promptly and satisfactorily its obligations herein*.

(ECF No. 8-1, at 2) (emphases added).   Paragraph 6 of the Terms & Conditions states that "Vendor will reimburse Contractor for any legal or other expenses incurred while enforcing its rights under this order." (*Id.*).   Here, Defendant never delivered the forklift, let alone by the promised delivery date of May 3, 2013.

With respect to damages, Plaintiff seeks an award of $124,536.35,[3] plus pre-judgment interest on the $72,488 deposit, post-judgment interest, and $15,090 in attorneys' fees and expenses.   (ECF No. 7, at 9).   The $124,536.35 figure is

---

[2] Plaintiff pleads unjust enrichment as an alternative to breach of contract.  Because the parties' dispute is governed by an express contract, the unjust enrichment claim need not be considered.

[3] In the complaint, Plaintiff requested an award of $127,856, which is slightly higher than the amount specified in its motion for default judgment.  (ECF No. 1, at 7).  Plaintiff also requested interest and attorneys' fees in the complaint.

comprised of: (1) the $72,488 deposit; (2) $35,984 in expenses for having to rent a forklift from May 2013 through October 2013 (at $6,500 per month); and (3) $16,064.35, which represents the difference between the $241,632 purchase price of the forklift from Defendant and the total cost of having to purchase new equipment as a result of Defendant's failure to perform.

In support of the requested damages award, Plaintiff submits the declaration of Carlo Cattelan, the Project Director for Bay State, who attests to the facts set forth in the complaint, attaching, *inter alia*: copies of invoices from Defendant and checks from Plaintiff along with bank statement information confirming the payment of the $72,488 deposit (ECF No. 8-2); copies of invoices from Trans-Rental, Inc., a check from Plaintiff, and bank information confirming that Plaintiff paid a total of $237,000 for the replacement equipment ($225,000 for the forklift and $12,000 for the forks that fit the forklifts) (ECF No. 8-3); vendor invoices, checks from Plaintiff, and bank statement information confirming that Plaintiff incurred $20,696 for modifications to the new replacement equipment that it had to purchase as a result of Defendant's breach (ECF No. 8-4).

Plaintiff may collect the $72,488 deposit for the forklift that Defendant never delivered, the $35,984 in expenses for having to rent equipment as a result of Defendant's failure to

deliver by May 3, 2013 or reasonably thereafter, and the $16,064.35 difference between the purchase price of the forklift and the total expense incurred by Plaintiff for the replacement equipment.  Plaintiff also requests prejudgment interest on the $72,488 deposit.  (ECF No. 7, at 7).  Plaintiff is not entitled to prejudgment interest on the deposit.  Award for prejudgment interest is allowed where the buyer's losses are liquidated and clearly defined.  *See, e.g., United States v. State of W.Va.*, 764 F.2d 1028, 1031 (4th Cir. 1985) ("[I]nterest is allowable as a matter of right for a breach of contract to pay when the amount due has been liquidated, ascertained, or agreed to."); *Wood Prods., Inc. v. CMI Corp.*, 651 F.Supp. 641, 653 (D.Md. 1986).  Plaintiff's damages have not been ascertained until now. Accordingly, the request for prejudgment interest will be denied.

Plaintiff also requests post-judgment interest.  It is well-settled that post-judgment interest applies, pursuant to 28 U.S.C. § 1961(c) and 26 U.S.C. § 6621, regardless of whether it is specified in the judgment.  28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court"); *see also White v. Bloomberg*, 360 F.Supp. 58, 63 (D.Md. 1973) ("interest would appear to be payable on a judgment regardless of whether or not the judgment order expressly calls for post-judgment interest to be paid" (*citing*

*Moore-McCormack Lines, Inc. v. Amirault*, 202 F.2d 893, 895 (1st Cir. 1953)).

Plaintiff additionally seeks an award of attorneys' fees and expenses, providing as support a separate affidavit of Leslie G. Moylan, who attests that "[t]hrough March 5, 2014, there has been a total of $14,690 in fees and $400 in costs for a total amount of attorneys' fees, expenses and costs of $15,090." (ECF No. 9 ¶ 3). The supporting documentation, while not as robust as it should be, shows approximately 33 hours of attorney time at either $450 or $490 per hour. Those hourly rates are only presumptively reasonable for attorneys with more than twenty years of experience. In this relatively straightforward breach of contract case, those rates seem rather high. Accordingly, attorneys' fees in the amount of $13,200 (33 hours at $400 per hour) will be awarded. As for costs, Plaintiff's evidence and the docket establishes that a $400 filing fee was paid, which it is entitled to recover. (*See* ECF No. 9-1, at 5).

**V.  Conclusion**

For the foregoing reasons, Plaintiff's motion for default judgment will be granted. A separate order follows.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge